```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA

                          Alexandria Division

DWIGHT C. BROWN,                )
                                )
        Plaintiff,              )
                                )
        v.                      )
                                )   CIVIL ACTION 1:04cv1544(JCC)
TRITON SECURITY, et al.,        )
                                )
        Defendants.             )
```

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on motion of the defendants, Triton Security, J. Michael Fingerhut, and Joy Appleby, for summary judgment pursuant to Fed. R. Civ. P. 56(c). For the following reasons, the Court will grant the defendants' motion.

**I.  Facts**

Plaintiff Dwight C. Brown, an African-American male, was formerly employed, on an at-will basis, by Defendant Triton Security, Inc. ("Triton") as a security officer. J. Michael Fingerhut is the president of Triton, and Joy Appleby is Triton's Vice President of Operations. On October 17, 2003, Triton terminated Brown. Based on this termination, Brown has raised claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Brown alleges that Triton first demoted and then terminated him based

-1-

on race discrimination and that Triton terminated him in retaliation for having raised claims of unpaid wages with the Department of Labor ("DOL").

Brown began working for Triton in January 2001, as a security officer, at a rate of $9.00 per hour. In July 2001, Triton promoted Brown to the position "project manager," which, as a salaried position, was FLSA-exempt and ineligible for overtime. In the summer of the following year, Triton promoted Brown a second time to the position of "field manager."

To record employee work hours, Triton required its employees to call a specific telephone number and enter a personal identification number. This caused a computer program to record the fact that an employee was calling from a certain location at a certain time. Triton required its employees to follow this procedure upon both arrival and departure from a work site. These "clock-in" and "clock-out" requirements were detailed in a handbook that Triton provided to all of its employees, including Brown, who does not dispute receiving this handbook. The employee handbook informed Triton employees that they were required to use this timekeeping method and that failure to do so could result in termination. The handbook also contained Triton's policy that three tardiness violations in a year could result in disciplinary action.

On August 5, 2002, Brown received a written warning for

failure to follow Triton's clock-in and clock-out procedures during the pay period from July 14, 2002 to July 27, 2002.  Brown subsequently failed to clock in on time on five separate occasions in September 2002, leading to a September 19, 2002 written warning for tardiness.  Thereafter, in the fall of 2002, Triton demoted Brown and returned him to a regular security officer position, which was paid on an hourly basis, covered under the FLSA, and eligible for overtime.

On November 21, 2002, Brown arrived at his work site thirty-six minutes late and received a written notification that further violations of Triton policies could result in his termination.  On July 8, 2003, Brown failed to report for his shift after giving Triton notice of his anticipated absence only thirty minutes prior to the scheduled start of his shift.  A Triton policy, contained in the employee handbook, required employees to give notice of an anticipated absence at least eight hours prior to the start of a shift.  On July 10, 2003, Brown received a written warning for violation of this policy.

Triton placed Brown on a six-month probation on July 14, 2003, due to a June 5, 2003 violation of the clock-in policy.  During Brown's probationary period, he failed to report on time for his shifts on the 1st, 15th, and 29th of August 2003, and the

2nd, 9th, and 12th of September 2003.[1]  On September 12, 2003, Fingerhut issued a memorandum to Triton's operations director, instructing him to terminate Brown as soon as an acceptable replacement was found.  As reasons for his decision, Fingerhut cited Brown's dishonesty and excessive tardiness.  Brown continued under the employment of Triton, violating its timekeeping policies on September 17 and 18, 2003, and violating its tardiness policy on six further occasions during September and October 2003.[2]  The last of these violations occurred on October 10, 2003.  On October 17, 2003, Triton terminated Brown's employment, citing the five violations of the timekeeping policy and the thirteen instances of tardiness that occurred during Brown's probationary period.  Although Brown claims that several of his written warnings were in retaliation for complaints he had lodged with Triton management, he does not dispute the fact of any of the above violations of Triton's policies.

## II.  Standard of Review

As set forth in Rule 56 of the Federal Rules of Civil

---

[1] Tritan also claims that Brown failed to follow its timekeeping procedures on three occasions during this period, specifically on August 7, 27, and 29, 2003.  However, Brown's verified pleading states that his failure to clock in on these three occasions occurred only because Triton's timekeeping system was down.  For summary judgment purposes, the Court will assume that the three August violations did not occur.

[2] Triton alleges a seventh violation of the tardiness policy, on October 6, 2003.  Brown disputes the fact of this violation, and he claims that he provided Triton management with sufficient notice of his anticipated tardiness on this date.  The Court will thus assume that there was no October 6, 2003 violation.

Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party.  *See id.*  In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict.  *See id.*  As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

When pro se litigants are involved, courts are presented with a "special dilemma." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). In particular, pro se claims often present courts with "obscure or extravagant claims defying the most concerted efforts to unravel them." *Id.* The Fourth Circuit has recognized an "indisputable desire that those litigants with meritorious claims should not be tripped up in court on technical niceties." *Id.* at 1277-78 (citing *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978)). Despite the Fourth Circuit's general observation that pro se complaints should be read liberally, it has also stated that there is an outer limit to liberal construction that "does not require those courts to conjure up questions never squarely presented to them." *Id.* at 1278. This Court has carefully and liberally construed the allegations of Brown's pro se complaint, giving him every reasonable benefit. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### III.  Analysis

A.  Race Discrimination Claims

As an initial matter, the Fourth Circuit has rejected the notion that supervisors can be held liable in their

individual capacities under Title VII. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998). For this reason, Fingerhut and Appleby are entitled to summary judgment on Brown's Title VII claims against them.

Brown's remaining claims under Title VII will be addressed jointly with his claims under 42 U.S.C. § 1981, as the analytical framework under each statute is the same. *Gairola v. Commonwealth of Virginia Dep't of Gen. Serv.*, 753 F.2d 1281, 1285-86 (4th Cir. 1985). Absent direct evidence of discriminatory treatment, the plaintiff must satisfy the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), and its progeny. *See Gairola*, 753 F.2d at 1286.

Under the *McDonnell Douglas* test, the plaintiff has the initial burden of establishing a prima facie case of race discrimination by showing that: 1) he is a member of a protected class; 2) he was qualified for the job and that his performance satisfied his employer's expectations; 3) he suffered an adverse personnel action despite his qualifications and performance; and 4) the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination. *See, e.g., Taylor v. Virginia Union Univ.*, 193 F.3d 219, 230 (4th Cir. 1999); *Gairola*, 753 F.2d at 1286. Once the plaintiff sets forth a prima facie case, the burden of production shifts to the employer "to articulate some legitimate, non-discriminatory reason for the

employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Of course, the ultimate burden of persuasion rests with the plaintiff, who must then prove that the reason proffered by the employer was not the true reason for the adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Brown's race discrimination claims pertain to two adverse employment actions taken against him: Triton's decision to demote him in the fall of 2002 and his termination on October 17, 2003. However, Brown has failed to establish a prima facie case of race discrimination with respect to either of these employment actions. The deficiency in Brown's case arises from the complete lack of circumstances that would create an inference of unlawful discrimination. Such circumstances would exist where other similarly situated employees of other races were treated more favorably by the employer. *See Bryan v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133-34 (4th Cir. 2002)

Brown points to the fact that after his promotion to field manager, Triton hired Michael Eimes, who is white, to fill the position vacated by Brown, and that Triton paid Eimes at a higher pay rate than Brown received in the position. However, Triton has established that Eimes possessed military experience and education that Brown did not. The Fourth Circuit has recognized that "[j]ob performance and relative employee

qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). The evidence of Eimes's qualifications demonstrates that Brown and Eimes were not similarly situated, and thus the disparate pay rate between Brown and Eimes therefore creates no inference of unlawful discrimination.

Brown has also alleged that he received a written warning for the November 21, 2002 tardiness incident while another Triton employee, who was white, did not. However, he has offered no evidence that supports this allegation or otherwise suggests that Triton meted out discipline on a discriminatory basis. In fact, Triton has discharged seventy-three employees since January 1, 2003 for tardiness, non-attendance, post abandonment, and violations of the timekeeping policy. (*See* Def.'s Mot., Attach. A.) The percentage of African-Americans terminated for these violations is roughly equivalent to the percentage of African-Americans on Triton's workforce as a whole. Brown has thus presented no evidence that Triton treated similarly situated employees of other races more favorably. Finally, Brown concedes that he never received any racial slurs or insults from anyone during his time at Triton. In light of these facts, the Court can find no circumstances giving rise to an inference of unlawful discrimination at the time of Brown's

demotion or termination.

Even if Brown were able to make out a prima facie case of race discrimination, Triton has set forth numerous legitimate, non-discriminatory reasons for Brown's demotion and termination. Brown received two written warnings for his violations of Triton's timekeeping policy before his fall 2002 demotion. Such were sufficient to justify the demotion. *See Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997) ("It is axiomatic that an employer is free to set its own performance standards, provided such standards are not a 'mask' for discrimination."). Following the demotion, Brown continued to violate Triton's timekeeping policy, was repeatedly tardy for his shifts, and on one occasion, altogether failed to report to a work site without giving the advance notification required by Triton. According to the Fourth Circuit, "the discharge of an employee on attendance, if properly established, is sufficient to rebut an inference of discrimination and shift the burden of production to the plaintiff in a disparate treatment case." *Warren v. Halstead Indus., Inc.*, 802 F.2d 746, 756 (4th Cir. 1986).

While Triton has set forth a variety of legitimate, non-discriminatory reasons for Brown's demotion and termination, Brown is unable to show, under the third step of the *McDonnell Douglas* analysis, that these reasons were merely pretextual. Although Brown has attempted to justify most of the tardiness

-10-

incidents, he does not dispute that he violated Triton's tardiness policy on each day in question. However justified Brown considers his tardiness to have been, "in a wrongful discharge action, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). This Court is thus unconcerned with whether Brown's demotion and termination based on Triton's stated justifications constituted a good business decision, but rather whether the stated reasons were the real reasons. By all indications, they were.

Because Brown has not set forth circumstances surrounding his demotion and termination that would give rise to an inference of race discrimination, he has failed to establish a prima facie case. Regardless, Triton has articulated sufficient legitimate reasons for Brown's demotion and termination, and Brown has not proven that these justifications were pretextual. Accordingly, summary judgment is appropriate against Brown's claims under Title VII and 42 U.S.C. § 1981.

B. Retaliation Claims

29 U.S.C. § 215(a)(3) prohibits an employer from taking adverse action against an employee for filing a complaint under the FLSA. A plaintiff alleging retaliation under § 215 must meet the same elements as are required in a retaliation action under Title VII or 42 U.S.C. § 1981. Thus, to state a prima facie case

for retaliation, the plaintiff must show that: 1) he engaged in a protected activity; 2) the employer took an adverse action against him; and 3) a causal connection existed between the protected activity and the claimed adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001). After the plaintiff establishes a prima facie case, the *McDonnell Douglas* analysis applies, and the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). If the employer does so, the plaintiff must demonstrate that the employer's proffered reasons are pretextual. *Id.*

Brown set forth a prima facie case of retaliatory discharge with respect to only one protected activity.[3] First, the Court notes that the majority of Brown's allegations concern disciplinary warnings from Triton that Brown claims were in retaliation for complaints that he had lodged with Triton management regarding his pay rate and job assignments. In lodging such complaints, Brown merely expressed his dissatisfaction with the terms of his employment-at-will status. Such complaints are not protected activity. *See Balazs v.*

---

[3] It is unclear whether Brown is also claiming that he was discharged in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). To the extent that Brown raises this claim, the Court will grant summary judgment for the defendants. Brown did not file his EEOC complaint until after his termination from Triton's employment. It is self-evident that the termination could not have been in retaliation for a later-occurring action.

*Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994) (holding that for an activity to be "protected," it must allege an actual violation of the relevant statute). Nevertheless, Brown's allegations also concern an internal complaint regarding overtime hours for which he had not been compensated, as well as a subsequent complaint to the DOL regarding the same wage and hours claim. Each of these complaints constituted protected activity. *See Kubicko v. Ogden Logistics Serv.*, 181 F.3d 544, 551 (4th Cir. 1999) (reasoning that protected activity includes both participation in informal grievance procedures and the filing of formal complaints).

To set forth a prima facie case, Brown must also establish the existence of a causal connection between these protected activities and his termination. To meet this requirement, Brown relies solely on the temporal proximity between the protected activities and his termination. As a general rule, mere temporal proximity will establish causation only if the time period between the protected activity and the adverse action is "very close." *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). On July 1, 2003, Brown made his initial complaint with Triton management regarding uncompensated overtime worked in May 2003. On September 10, 2003, Brown filed his complaint with the DOL. The DOL contacted Triton regarding Brown's complaint on October 14, 2003. As stated above, Brown was terminated on October 17, 2003.

A causal connection cannot exist between a protected activity and an adverse employment action unless the employer had knowledge of the protected activity. *See Shields v. Fed. Express Corp.*, 120 Fed. Appx. 956, 962 (4th Cir. 2005); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). There is no evidence to suggest that Triton was aware of Brown's DOL complaint before October 14, 2003. There is uncontroverted evidence, however, that Triton management had reached a decision to terminate Brown on September 12, 2003. (*See* Def.'s Mot., Attach. N.) Triton delayed Brown's termination after reaching this decision, to allow for time to find an acceptable replacement, and Triton then effected the termination on October 17, 2003, after Brown's violations of the timekeeping and tardiness policies continued. Because Triton did not become aware of Brown's DOL complaint until after it made the decision to terminate him, the termination could not have been in retaliation for the DOL complaint.

The only remaining protected activity is Brown's July 1, 2003 complaint to Triton management regarding uncompensated overtime hours. Again, Brown's only evidence of causation is the temporal proximity of this complaint to his termination. In this instance, Triton unquestionably knew of the protected activity, as Brown raised the complaint with Triton itself. The complaint occurred approximately ten weeks prior to Triton's September 12,

2003 decision to discharge Brown. Although such temporal proximity by no means conclusively establishes causation, the Fourth Circuit has held that a ten-week period between the protected activity and the adverse action gives rise to a sufficient inference of causation to satisfy the prima facie requirement. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003).

While Brown has set forth a prima facie case that Triton terminated him in retaliation for his internal wage and hour complaints, Triton has articulated sufficient legitimate, non-retaliatory reasons for Brown's termination. The undisputed facts set forth above show that after Brown's July 1, 2003 complaint, he failed to report for a shift on one occasion and failed to comply with Triton's timekeeping policies on another occasion, at which time he was placed on probation. During his probationary period, he violated Triton's tardiness policies no less than six separate times, leading to Triton's decision to terminate him on September 12, 2003. After this decision was made, Brown violated Triton's timekeeping policies twice and its tardiness policies on six further occasions, resulting in his ultimate termination on October 17, 2003. These facts are sufficient to rebut any inference of retaliation and shift the burden of production to Brown. *See Price*, 380 F.3d at 212; *Warren*, 802 F.2d at 756.

As stated in the Court's discussion of Brown's race discrimination claims, Brown has not proffered any evidence that would suggest that the articulated reasons for his termination were pretextual.  The Court therefore concludes that Brown was discharged for legitimate reasons.  The mere fact that Brown filed a complaint against his employer "could not immunize [him] from legitimate disciplining for unsatisfactory performance." *Equal Employment Opportunity Comm'n v. Fed. Reserve Bank of Richmond,* 698 F.2d 633, 668-69 (4th Cir. 1983), *rev'd on other grounds sub nom., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984).  Accordingly, summary judgment is appropriate against Brown's retaliation claims.

### IV.  Conclusion

For the foregoing reasons, the Court will grant the motion of the defendants, Triton Security, J. Michael Fingerhut, and Joy Appleby, for summary judgment.  An appropriate Order shall issue.

October 19, 2005   _____/s/_____
Alexandria, Virginia              James C. Cacheris
                          UNITED STATES DISTRICT COURT JUDGE